BLUE CROSS & BLUE SHIELD OF MICHIGAN v COMMISSIONER
OF INSURANCE

Docket No. 106469. Submitted December 8, 1988, at Lansing. Decided
August 8, 1989. Leave to appeal applied for.

Blue Cross and Blue Shield of Michigan, a nonprofit health care
corporation, makes direct payments to participating health care
providers for medically necessary and appropriate treatment
rendered to its insureds and employs a postpayment audit
procedure to recoup amounts it deems to be overpayments.
Where an audited provider does not reimburse BCBSM amounts
determined to be overpayments, claims by that provider for any
subsequent services are denied by BCBSM. Several providers,
whose claims were denied pursuant to BCBSM's audit, requested
informal managerial-level conferences with BCBSM pursuant to
§ 404 of the Nonprofit Health Care Corporation Reform Act,
MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.* In each case
BCBSM failed to hold the conference within thirty days as
required by § 404(3). The providers sought review by the Insur-
ance Commissioner pursuant to § 404(3). An Insurance Commis-
sioner designee found that BCBSM had violated portions of
§§ 402 and 403, and ordered BCBSM to pay the amounts with-
held from the providers. BCBSM, pursuant to § 163 of the
Administrative Procedures Act, MCL 24.263; MSA 3.560(163),
requested a declaratory ruling from the commissioner as to the
applicability of §§ 402, 403, 404 and 1986 AACS, R 505.101 *et
seq.* to its postpayment audit procedures. The commissioner
issued a ruling declaring in part that the conference and
review process outlined in § 404 applied to postpayment audits
and that 1986 AACS, R 550.108 provided remedies for wrong-
fully refused claims. BCBSM petitioned the Ingham Circuit
Court for review of the commissioner's ruling. The court,
Thomas L. Brown, J., upheld the ruling. BCBSM appealed to the
Court of Appeals.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Insurance §§ 11, 21, 22, 547 *et seq.*

Right of insurer under health or hospitalization policy to restitution
of payments made under mistake. 79 ALR3d 1113.

Coverage and exclusion under hospital or medical service (Blue
Cross-Blue Shield) contracts. 81 ALR2d 927.

1. The circuit court did not err in determining that the commissioner had not exceeded his authority by ruling that remedies for disputes involving refused claims included ordering payment of a refused claim and ordering that no monies need be repaid to BCBSM.

2. The informal conference procedure utilized by the commissioner did not violate BCBSM's due process rights with respect to its property interest in the supposed overpayments to the providers. Under § 404(5), BCBSM, as well as the providers, had the right to request a contested-case hearing following the informal conference with the commissioner.

3. No violation of BCBSM's equal protection rights resulted from the treatment accorded BCBSM by the commissioner, which treatment BCBSM argued was different from that given insurance companies, in the absence of a showing that such different treatment had no rational basis. Additionally, because BCBSM is not an insurance company but is a health care corporation, it may be treated differently for purposes of state regulation.

Affirmed.

ADMINISTRATIVE LAW — COMMISSIONER OF INSURANCE — NONPROFIT HEALTH CARE CORPORATION REFORM ACT.

The Commissioner of Insurance, in reviewing a denial by a health care corporation of a claim made by a health care provider for payment of medical services rendered, including a denial based on the provider's refusal to reimburse the corporation for previous payments determined after audit to be overpayments, has authority under the Nonprofit Health Care Corporation Reform Act and the administrative rules promulgated thereunder to order payment of the refused claim or to order that the provider need not reimburse the corporation (MCL 550.1402-550.1404; MSA 24.660[402]-24.660[404]; 1986 AACS, R 550.108).

*Foster, Swift, Collins & Coey, P.C.* (by *Stephen O. Schultz*), for Blue Cross & Blue Shield of Michigan.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Sharon L. Feldman,* Assistant Attorneys General, for the Commissioner of Insurance.

Amici Curiae:

*Honigman, Miller, Schwartz & Cohn* (by *Stuart H. Teger*), for the Michigan Hospital Association.

*Gilbert M. Frimet & Associates, P.C.* (by *Gilbert M. Frimet* and *Bruce C. Blanton*), and *Andrew B. Wachler, P.C.* (by *Andrew B. Wachler* and *Karen Berkery*), for the health care providers.

Before: DANHOF, C.J., and HOOD and R. L. TAHVONEN,* JJ.

R.L. TAHVONEN, J. Blue Cross and Blue Shield of Michigan appeals as of right a circuit court order entered on January 20, 1988, affirming a declaratory ruling by the Commissioner of Insurance. We affirm.

BCBSM, a nonprofit health care corporation, makes payments for medical services directly to participating health care providers, pursuant to agreements entered with them. The agreements stipulate that BCBSM will pay for only medically necessary and appropriate treatments. Due to the large number of claims received, BCBSM does not determine the appropriateness of a claim prior to payment. Instead, it engages in a procedure known as a postpayment audit, whereby auditors take a sample of a provider's billings for a certain period of time. A medical consultant to BCBSM examines the sample to determine if the provider's medical procedures were necessary and appropriate. The percentage of procedures found to be medically unnecessary or inappropriate is then projected onto the entire universe of claims submitted by that provider during the period of time at issue, on the assumption that that percentage of all procedures utilized by the provider was improper. BCBSM then denies payment of that percentage of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

all claims for that period. It requests repayment for the "denied" claims, and if the provider refuses to make payment, BCBSM withholds payment on current claims until the amount is recouped.

Several providers who were notified that portions of their claims had been denied sought a review under MCL 550.1404(1); MSA 24.660(404)(1), which is part of the Nonprofit Health Care Corporation Reform Act, MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.* Pursuant to § 404(1), each provider requested an informal managerial-level conference. In each case, BCBSM failed to hold the conference within thirty days as required by § 404(3). The providers then sought review and determination of the matter by the commissioner, pursuant to § 404(3), alleging that BCBSM's postpayment audit procedure violated certain portions of MCL 550.1402; MSA 24.660(402) and MCL 550.1403; MSA 24.660(403). An Insurance Commissioner designee conducted a review of each claim and found that BCBSM had violated specific subsections of §§ 402 and 403, and had therefore improperly denied claims. Thus, BCBSM had no right to withhold payment of current claims and was ordered to pay any monies withheld.

Pursuant to MCL 24.263; MSA 3.560(163), BCBSM requested a declaratory ruling from the commissioner as to the applicability of §§ 402, 403, and 404, as well as the insurance bureau rules entitled "Procedures for Informal Managerial-Level Conferences and Review by Commissioner of Insurance," 1986 AACS, R 550.101 *et seq.*, to its postpayment audit procedures. The commissioner issued a declaratory ruling that found, among other things, that the conference and review process outlined in § 404 applied to postpayment audits and that 1986

AACS, R 550.108 provided remedies for wrongfully refused claims.

BCBSM requested that the commissioner reconsider his declaratory ruling with respect to the scope of remedies available for wrongfully refused claims. Specifically, BCBSM sought a ruling that, apart from the cease and desist provisions in § 402(7), the commissioner had no authority to grant monetary or injunctive relief. The commissioner declined to so rule.

Pursuant to MCL 24.263; MSA 3.560(163), BCBSM filed a petition in Ingham Circuit Court seeking review of the commissioner's decisions. The circuit court upheld the commissioner's ruling.

BCBSM's first claim on appeal is that the trial court erred in determining that the commissioner had not exceeded his authority by ruling that remedies for disputes involving refused claims included ordering payment of a refused claim or ordering that no monies need be repaid to BCBSM. BCBSM argues that, while the commissioner can investigate and review the audit procedures used by BCBSM and issue a cease and desist order prohibiting continuation of an unfair trade practice after a contested hearing under § 402(7), the commissioner cannot order payment of a denied claim.

Section 404(4) provides:

> The commissioner shall by rule establish a procedure for determination under this section, which shall be reasonably calculated to resolve these matters informally and as rapidly as possible, while protecting the interests of both the person and the health care corporation.

Rule 108 provides in part:

> (1) If the decision by the commissioner or the

commissioner's designee indicates that the grievant's claim was wrongfully refused in violation of section 402 or section 403 of Act No. 350 of the Public Acts of 1980, as amended, being § 550.1402 or § 550.1403 of the Michigan Compiled Laws, the wrongfully refused claim shall be paid within 30 days of the date the decision is mailed to the health care corporation.

BCBSM asserts that an agency may not grant to itself by rule more authority than is provided to it by statute, *Coffman v State Bd of Examiners in Optometry,* 331 Mich 582, 589; 50 NW2d 322 (1951), and argues that Rule 108 grants more authority to the commissioner than is granted to him by §§ 404(4) or 402(7). We disagree.

Section 404(4) requires the commissioner to establish a procedure reasonably calculated to resolve disputes, including disputes over refused claims. As the trial court noted, a process reasonably calculated to resolve a dispute must include a decision as to whether the refused claim must in fact be paid. The decisions that BCBSM must not withhold payment on current claims and that providers need not refund monies previously received are designed to resolve the disputes. The remedies provided under § 404 are not limited by § 402(7), nor does § 402(7) contain the only remedy available to the commissioner. Section 404 expressly grants the commissioner the authority to engage in dispute resolution. Provision of remedies for violations of statutes, as contained in Rule 108, is necessary in order to effectuate the resolutions.

BCBSM next claims that the informal conference procedure utilized by the commissioner violates its right to due process. It argues that it has a property interest in the overpayments to providers and that right is extinguished by the nonevidentiary hearing. We disagree. Section 404(5) provides the

health care corporation, as well as the provider, with the right to request a contested-case hearing if it does not agree with the results of the informal procedures. Thus, even if BCBSM has a property right in the overpayments, that interest is protected by the procedures provided by the statute. An essential principle of due process is that a person shall not be deprived of property without prior notice and an opportunity to be heard. *Cleveland Bd of Ed v Loudermill,* 470 US 532, 542; 105 S Ct 1487; 84 L Ed 2d 494 (1985). BCBSM was afforded the opportunity to present any information it wished during the informal conference which, along with the availability of a contested-case hearing, gave BCBSM a meaningful opportunity to be heard before any property interest was extinguished.

BCBSM last claims that the informal conference procedure used by the commissioner violates its right to equal protection because the commissioner treats BCBSM differently than other insurance companies when interpreting and applying the prohibitions against unfair trade practices. However, BCBSM is not an insurance company, but is a health care corporation. *Blue Cross & Blue Shield of Michigan v Governor,* 422 Mich 1, 14-15, 84; 367 NW2d 1 (1985), reh den 422 Mich 1206 (1985), app dis 474 US 805; 106 S Ct 40; 88 L Ed 2d 33 (1985). Because entities such as BCBSM and private insurance companies have inherent differences, the state may create separate classifications for purposes of regulating the entities. *Id.* Thus, BCBSM's treatment may differ from that of private insurance companies. BCBSM has not shown that the treatment afforded it under the procedures utilized by the commissioner pursuant to §§ 402, 403, and 404 had no rational basis, as required for an equal

protection claim based on a nonsuspect classification. *Michigan Ass'n of Governmental Employees v Civil Service Comm,* 125 Mich App 180, 191-192; 336 NW2d 463 (1983), lv den 417 Mich 1095 (1983).

Affirmed.