[Cite as *Columbus v. DeWitt*, 2025-Ohio-1067.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 24AP-12 |
| v. | : | (M.C. No. 2023 TRC 120781) |
| Ronnie DeWitt, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 27, 2025

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias-Hunter*, and *Orly Ahroni*, for appellant. **Argued:** *Orly Ahroni.*

**On brief:** *Bellinger & Donahue*, and *Kerry M. Donahue*, for appellee. **Argued:** *Kerry M. Donahue.*

APPEAL from the Franklin County Municipal Court

BEATTY BLUNT, J.

{¶ 1}  Plaintiff-appellant, the city of Columbus appeals the December 8, 2023 judgment of the Franklin County Municipal Court, which found that defendant-appellee, Ronnie DeWitt's right to a speedy trial was violated and granted his motion to dismiss this case.

{¶ 2}  All the charges in this case arose from an incident that allegedly occurred on June 2, 2023, on Interstate 270 southbound near South Hamilton Road. DeWitt was apprehended by a Columbus Police officer and charged under the Columbus City Code with operating a vehicle while impaired ("OVI"), driving under a suspended license, operating a motor vehicle without a license, and failure to control a vehicle; and under the Ohio Revised Code with refusing a chemical test after having been convicted of OVI within the preceding 20 years.

{¶ 3}   It is not completely clear from the municipal court record whether DeWitt was arrested and jailed on June 2, but there is a docket entry with a jail slating number on the outside of the municipal court file.  In any event, DeWitt was arraigned on June 8, 2023; he entered a plea of not guilty and was given a recognizance bond.  On June 9, 2023, the case was assigned to a judge, and at that time, a new docket note indicated that DeWitt was in jail and being detained on a hold from a different case.  On June 13, 2023, his first pretrial was held and DeWitt's new attorney entered an appearance—the case was then continued at that attorney's request, although DeWitt did not specifically waive his right to a speedy trial. On June 17, 2023, the case was continued for a pretrial hearing at the request of DeWitt's attorney.  Again, DeWitt did not specifically waive his right to a speedy trial, and the continuance entry indicated that DeWitt was "in jail Lorain Co." (July 17, 2023 Entry.)

{¶ 4}   On August 3, 2023, the case was continued for a third time, for another pretrial hearing at the defense's request. Once again, neither DeWitt nor his counsel specifically waived his right to a speedy trial, and no specific reason was given for the continuance.  On August 21, 2023, the case was again continued for a pretrial hearing at the request of the defense, and as before, neither DeWitt nor his attorney affirmatively waived his right to a speedy trial, and again no specific reason was given for the continuance.

{¶ 5}   At the next hearing, on September 19, 2023, the case was scheduled for a jury trial to be held October 19, 2023.  On October 10, 2023, the defendant's counsel fax-filed a Request for Final Disposition. (Oct. 18, 2023 Req. for Final Disposition.) The pleading requested a disposition of the pending charges in the case "pursuant to Ohio Revised Code 2941.401," because "Ronnie DeWitt is currently incarcerated at Lorain Correctional Institution as a prisoner with the State of Ohio." *Id*.  The court ultimately continued that October 19, 2023 scheduled trial date at defense counsel's request—as before, no specific reason was given for the continuance, and neither DeWitt nor his attorney specifically waived the right to a speedy trial.  On November 6, 2023, the new scheduled trial date, the case was continued at the request of the prosecutor, but on the new scheduled trial date, December 8, 2023, the municipal court dismissed the case with a form entry indicating that it was "dismissed because of failure to prosecute within speedy trial limits." (Dec. 8, 2023 Dismissal Entry.)

{¶ 6}  On January 4, 2024, the state filed a notice of appeal and accompanying docketing statement, indicating that "[a]n App.R. 9(C) statement will be filed." Two different proposed App.R. 9(C) statements are included in the appeal file, although neither was date-stamped in either the municipal court or the court of appeals. But on February 21, 2024, the municipal court issued an "Entry Settling and Approving App.R. 9(C) Statement," which was filed with the municipal court clerk on that date. The settled App.R. 9(C) statement states, in its entirety:

> On December 8, 2023, the parties appeared in court for trial. Defendant was represented by counsel but was not personally present in court because he remained imprisoned in Lorain Correctional Institution, which is a correctional institution of the State of Ohio. Defense counsel approached the bench and made an oral motion to dismiss the case due to the City's failure to convey Defendant from Lorain Correctional Institution to the Franklin County Municipal Court. *The prosecutor responded that the 180-day time limit to bring Defendant to trial had not expired. The judge told defense counsel to file a written motion to dismiss, and the case would be continued to allow the State time to respond.*
>
> Defense counsel subsequently re-approached the bench that same day and made an oral motion to dismiss the case alleging a violation of his speedy trial rights. *Defense counsel argued that Defendant had not waived his speedy trial rights and that, because the case had been pending since June, speedy-trial time had expired a few months prior.* The judge asked the prosecutor if she had a counterargument, to which the prosecutor replied, "No, but I am reaching out to our appeals unit." The judge immediately proceeded to sign a "dismissal entry" on which he checked a box beside text which stated, "This case is dismissed because of failure to prosecute within speedy trial limits." The prosecutor did not object at this time.
>
> The proceedings and dismissal of the case took place in an informal, off-the-record discussion. None of the proceedings took place on the record. No transcript or other recording of the proceedings was made.

(Emphasis added.)  (Feb. 21, 2024 Entry at 1-2.)  The state asserts a single assignment of error with the municipal court's judgment, asserting that "[t]he trial court plainly erred by dismissing the charges on speedy trial grounds."

{¶ 7} The right to a speedy trial in Ohio derives from interrelated constitutional and statutory sources, and three of those statutes govern this case. First, R.C. 2945.71, the general speedy trial statute, states in pertinent part:

> (B)(2) Subject to division (D) of this section, a person against whom a charge of misdemeanor, other than a minor misdemeanor, is pending in a court of record, shall be brought to trial . . . *Within ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree,* or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days.
> . . .
>
> (E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days.

(Emphasis added.) Second, the time limits established under R.C. 2945.71 are also subject to extension pursuant to R.C. 2945.72, which provides, in pertinent part:

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
>
> (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against the accused, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure availability of the accused;
> . . .
>
> (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion . . . .

Finally, R.C. 2941.401, the prisoner charge disposition statute, provides in pertinent part:

> When a person has entered upon a term of imprisonment in a correctional institution of this state, and when during the continuance of the term of imprisonment there is pending in this state any untried indictment, information, or complaint against the prisoner, *the prisoner shall be brought to trial within one hundred eighty days after the prisoner causes to be*

> *delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of the prisoner's imprisonment and a request for a final disposition to be made of the matter,* except that for good cause shown in open court, with the prisoner or the prisoner's counsel present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time served and remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the adult parole authority relating to the prisoner.

(Emphasis added.) *Id.*

**{¶ 8}** In *State v. Diallo*, 2013-Ohio-1248 (10th Dist.), this court summarized the law governing review of dismissals based upon speedy trial violations as follows:

> An accused is guaranteed the constitutional right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution and Ohio Constitution, Article I, Section 10. Ohio's speedy trial statutes, found in R.C. 2945.71 et seq., were implemented to enforce those constitutional guarantees. The speedy trial statutory provisions are mandatory and require strict compliance by prosecutors, as well as strict enforcement by the courts. If the trial court and prosecution fail to bring a defendant to trial within the time required, the trial court shall discharge the defendant.
>
> The proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C. 2945.71 and 2945.72. . . . Once a defendant establishes a prima facie case for dismissal, the state bears the burden to prove that time was sufficiently tolled and the speedy trial period extended.

(Internal citations omitted.) *Id.* at ¶ 8-10.

**{¶ 9}** Generally, "[o]n appeal of an order denying a motion to dismiss based on a statutory speedy-trial violation, we independently calculate whether the time to bring a defendant to trial expired." *State v. Williams*, 2023-Ohio-1002, ¶ 14 (10th Dist.).  And as the state properly suggests, this case is reviewed under a plain error standard—at the time the dismissal was entered and as the settled App.R. 9(C) statement indicates, the prosecution did not formally object but instead merely stated that it was "reaching out to

[the] appeals unit." (Feb. 21, 2024 Entry at 2.) Plain error review under Crim.R. 52(B) places some limitations on the ability of appellate courts to correct errors that were not objected to at trial. In such cases, there must be a deviation from a legal rule, the deviation must constitute an obvious defect in the trial proceedings, and the deviation must have affected the outcome of the trial proceedings. *See, e.g.*, *State v. Barnes*, 2002-Ohio-68, ¶ 20.

{¶ 10} In *Columbus v. Coleman*, 2022-Ohio-4478 (10th Dist.), we recognized that where the trial court's statutory speedy trial time calculations were obviously incorrect and deviated from the correct legal rule, "dismissing the case on that basis was an obvious defect in the proceedings" that adversely affected the prosecution's ability to bring the defendant to trial and therefore constituted plain error. *Id.* at ¶ 9. Accordingly, we reversed the dismissal and remanded the case for further proceedings. *Id.* at ¶ 11.

{¶ 11} The *Coleman* analysis governs our review of this case. And under that analysis the state has shown that the municipal court's dismissal constitutes plain error, both as to the prisoner charge disposition statute and as to the general speedy trial statute.

{¶ 12} First, we observe that the case was dismissed on December 8, 2023, 189 days after the defendant was charged, ostensibly longer than the 180-day period provided in the prisoner charge disposition statute. But as the state properly argued below, the plain language of R.C. 2941.401 provides that the 180-day clock does not begin until "after the prisoner causes to be delivered to the prosecuting attorney and the appropriate court in which the matter is pending, written notice of the place of the prisoner's imprisonment and a request for a final disposition to be made of the matter . . . ." In this case, DeWitt did not request that disposition until October 10, 2023; accordingly, the state had 180 days after that date to bring him to trial. *See generally State v. Hairston*, 2004-Ohio-969, ¶ 20-22 (holding that R.C. 2941.401 "places the initial duty on the defendant to cause written notice to be delivered to the prosecuting attorney and the appropriate court advising of the place of his imprisonment and requesting final disposition," and "imposes no duty on the state until such time as the incarcerated defendant provides the statutory notice"). And that presumes the notice filed was sufficient in the first instance—the plain language of the statute requires the request for disposition "shall be accompanied by a certificate of the warden or superintendent having custody of the prisoner, stating the term of commitment

under which the prisoner is being held," and the record does not indicate such a certificate was filed in this case. Even if this court presumes the lack of the required certificate was harmless in DeWitt's case, under the statute's plain terms the state had until at least Monday, April 8, 2024 to bring DeWitt to trial. Therefore, dismissal of the case was clearly erroneous and unjustifiable under R.C. 2941.401.

{¶ 13} Reliance on R.C. 2945.71 to justify dismissal is equally unwarranted, although DeWitt was incarcerated during the period leading up to the trial he was not being held on these charges or this case, as the record establishes, he was given a recognizance bond on June 8, 2023. As a result, the triple-count provision in R.C. 2945.71(E) does not apply, and the state had 90 days from June 2, 2023 to bring DeWitt to trial, subject to any valid extensions under R.C. 2945.72. And our review of the record and the trial court's settled App.R. 9(C) statement demonstrates that there are several valid extensions under that statute—the record shows that all of the continuances between June 13, 2023 and September 19, 2023 were at the request of the defendant, as was the requested continuance between October 19, 2023 and November 6, 2023. Accordingly, speedy-trial time was tolled for the period of those continuances pursuant to R.C. 2945.72(H), and as a result the case was dismissed prior to the statutory deadline—based simply on those continuances, the state had at least 16 additional days prior to the expiration of the R.C. 2945.71(B)(2) speedy-trial period to bring DeWitt to trial, and dismissal of the case was therefore both premature and unwarranted.

{¶ 14} For these reasons, the municipal court's dismissal of this case was clearly erroneous, was an obvious defect in the proceedings, and directly affected the outcome of those proceedings. Accordingly, we sustain the city's assignment of error and find that the court plainly erred by dismissing the charges against DeWitt. The municipal court's judgment in this case is reversed, and the case is remanded to that court for further proceedings consistent with this decision.

*Judgment reversed;*
*and cause remanded.*

MENTEL and BOGGS, JJ., concur.

---